Paul R. Smith appeals a judgment from the Scioto County Court of Common Pleas that reduced his spousal support obligation to his former spouse, but found him in contempt for failure to pay past due support. Unsatisfied with the amount of support he must still pay, as well as the contempt finding, he assigns three errors for our review:
 "FIRST ASSIGNMENT OF ERROR: THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO TOTALLY SUSPEND THE PLAINTIFF/APPELLANT'S DUTY OF SPOUSAL SUPPORT DUE TO A CHANGE OF CIRCUMSTANCES.
 "SECOND ASSIGNMENT OF ERROR: THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN SETTING A DUTY OF SPOUSAL SUPPORT IN THE AMOUNT OF $600.00 PER MONTH DUE TO A CHANGE OF CIRCUMSTANCES OF BOTH PARTIES.
 "THIRD ASSIGNMENT OF ERROR: THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING THE PLAINTIFF/APPELLANT IN CONTEMPT OF COURT FOR NONPAYMENT OF SUPPORT WHEN THERE WAS A MOTION TO REDUCE OR SUSPEND SUPPORT PENDING."
Because the trial court acted within its discretion in reducing spousal support and in finding the appellant in contempt, we affirm its judgment.
 I.
The appellant and appellee, Betty Gearlene Smith, divorced in 1996 after twelve years of marriage. In addition to dividing the marital assets, the Scioto County Court of Common Pleas, Domestic Relations Division, ordered the appellant to pay spousal support to the appellee for a three-year period. The divorce decree ordered the appellant to pay $800 per month in support when he was working full-time and $220 per month when he was on sick leave. At the time of the divorce, the appellant was on disability leave from his job with the Norfolk and Western Railway Company ("N W"). The court also found that the appellee suffered from "atypical depression/bi-polar disorder" and would not be employable for at least two years from the time of the divorce judgment.
In light of the appellant's failure to pay his spousal support obligation, the appellee filed a motion in March 1997 for contempt and a lump-sum judgment for arrearages. The next day, the appellant filed a motion to "modify or reduce" his spousal support obligation. In deciding the appellee's contempt motion, the magistrate found that the appellant received disability benefits from N W until he resigned on November 13, 1996. Less than one week later, however, the appellant began working at Columbia Gas, with approximately the same salary he had earned during his full-time employment at N W. The magistrate also found that the appellant had made no support payments from July 22, 1996 through March 1997.[1]
Accordingly, the magistrate found the appellant in contempt and calculated a total arrearage from August 1, 1996 through March 31, 1997 of $3,954.62 plus poundage. The decision allowed the appellant to purge his contempt, and avoid a ten-day jail sentence, by making payments toward the arrearages. The magistrate also denied the appellant's motion to modify spousal support. The court adopted the magistrate's decision on both motions.
In November 1997, the appellant filed another motion to "reduce or suspend" spousal support. The parties had taken no action on this motion as of March 1998, when the appellee again moved for contempt and lump sum judgment for arrearages based on the appellant's continued failure to make spousal support payments. Following a hearing, the magistrate issued a decision regarding both motions in August 1998.[2] The magistrate found that the appellant had been terminated from his $45,000 per year job with Columbia Gas on November 13, 1997. Beginning February 3, 1998, the appellant commenced employment with LeFebure Corporation, earning $29,056 per year. The magistrate found that the appellant's income "has not been decreased voluntarily." Accordingly, the magistrate found that the appellant was entitled to a reduction in his spousal support obligation. However, in light of the appellee's lack of income and contributions by the appellant's current wife to his household income, the magistrate did not reduce the appellant's support obligation by a percentage equal to his reduction in salary. The magistrate explained:
 I find [appellant's] motion well-taken and that his spousal support obligation should be reduced to $600.00 per month plus the processing charge. Although [appellant's] income has decreased by one-third (1/3), his support obligation need not, necessarily, be decreased by the same proportion, inasmuch as his current spouse is available to satisfy his and her family obligations and, at this time, said spousal support is [appellee's] only income. A support order of $600.00 per month would give [appellee] $7,200.00 of annual taxable income and leave [appellant] with approximately $22,000.00 of annual taxable income.
The magistrate made the modification retroactive to December 1, 1997 and proceeded to decide the contempt issue. The magistrate recalled that it entered judgment in the amount of $3,954.62 for prior arrearages, by way of its July 1997 contempt order. The appellant had not paid toward these arrearages. From April 1, 1997 through July 31, 1998, the magistrate found that the appellant had a total obligation of $11,424, including a processing charge owed to the Scioto County Child Support Enforcement Agency ("CSEA").[3] The magistrate found that the appellant paid $7,181 toward his support obligation over this period, for a net arrearage of $4,243. Added to his prior arrearage of $3,954.62, the appellant's total arrearages amounted to $8,197.62, including the processing charge. Accordingly, the magistrate ordered the appellant to pay $8,036.88 for his arrearages through July 31, 1998 and $160.74 to the CSEA for the processing charge. The magistrate ordered the appellant to serve a ten day sentence in the Scioto County Jail for failing to purge his July 1997 contempt order. Additionally, the magistrate found the appellant in contempt a second time for his continued failure to pay the court-ordered spousal support obligation. The magistrate sentenced the appellant to forty-five days in jail, which the appellant could purge by paying $100 per month toward his arrearages.[4] The court overruled the appellant's objections and confirmed the magistrate's decision.
 II.
We analyze the appellant's first and second assignments of error together, as they raise related issues. In the first assignment of error, the appellant argues that the court erred in "failing to totally suspend" his duty of spousal support. Alternatively, the second assignment of error argues that the court should have reduced his obligation to a figure below $600 per month. In these two assignments, the appellant argues that he should pay either no spousal support at all or at least some figure below $600 per month. The appellant's arguments are meritless.
The court's original divorce judgment in this case reserved jurisdiction to modify the amount of spousal support owed by the appellant. Such a reservation is a necessary prerequisite to a court's modification of a spousal support order. See R.C.3105.18(E) (1); White v. White (Mar. 3, 1998), Scioto App. No. 97-CA-2511, unreported. But, even when a court has reserved jurisdiction to modify a spousal support order, it may not do so unless it finds that a change in the parties' circumstances has occurred. R.C. 3105.18(E). The court must decide the threshold issue of whether "changed circumstances" exist before it may consider the appropriateness of the current spousal support order. Thacker v. Thacker (1991), 74 Ohio App.3d 348,350; Leighner v. Leighner (1986), 33 Ohio App.3d 214, 215;Patel v. Patel (Mar. 23, 1999), Athens App. Nos. 98CA29, 98CA30, unreported. Once the trial court has found a change in circumstances, it must then determine the amount of support that is "appropriate and reasonable," through an examination of factors contained in R.C. 3105.18 (C) (1). Fallang v. Fallang
(1996), 109 Ohio App.3d 543, 548-49; Purden v. Purden (June 2, 1994), Franklin App. No. 93APF10-1428, unreported. The amount of spousal support awarded after a consideration of these factors is within the trial court's sound discretion. Id.; see, also, Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 218
(reviewing court will not disturb trial court determination on spousal support absent an abuse of discretion). Under this standard, a reviewing court will uphold the trial court's decision unless it appears unreasonable, arbitrary, or unconscionable. Id. at 219. In conducting its review, an appellate court may not freely substitute its judgment for that of the trial court. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128,131.
In this case, the court found that the appellant had suffered an involuntary decrease in income from $45,000 per year to $29,056 per year. This reduction in income provided the requisite change in circumstances necessary to justify a downward modification of spousal support. See R.C.3105.18(F) (change in circumstances includes, but is not limited to, any involuntary decrease in wages or salary). While the court decided that the appellant was entitled to a modification, it found that the appellant must continue paying $600 per month, a figure representing a $200 reduction from the court's previous support order. Unsatisfied with a $200 per month reduction, the appellant's first two assignments of error seek a further decrease.
Liberally construed, the appellant's arguments can be read to state that the court did not fulfill its obligations under R.C.3105.18(C) when it reduced the support obligation by "only" $200 per month. The appellant's focus on the appellee's purported reduction in "need" for spousal support, as well as the notion that his support obligation should be reduced by at least the same percentage as his income was reduced, implies that the trial court did not consider all of the relevant factors in setting the modified level of spousal support. When a trial court imposes a spousal support obligation in the first instance, it must show that it considered all of the factors contained in R.C. 3105.18(C)(1) in deciding whether the spousal support order is reasonable and appropriate. Kaechele v.Kaechele (1988), 35 Ohio St.3d 93, paragraph one of the syllabus; see, also, R.C. 3105.18(C)(1) (noting that court "shall consider" all fourteen enumerated factors in determining nature, amount, terms of payment, and duration of spousal support). Because that issue was never appealed, we assume the trial court satisfied its obligation in its original divorce judgment, making specific findings on each factor before imposing a spousal support obligation.[5] However, there is no express requirement that the court completely re-examine the R.C. 3105.18(C) (1) factors in deciding to modify an existing support order. Kucmanic v. Kucmanic (1997), 119 Ohio App.3d 609,613. This is because "such a rehashing of these factors is not necessarily helpful when addressing a motion to modify an original spousal support order." Flauto v. Flauto (Apr. 29, 1999), Mahoning App. No. 97 CA 65, unreported. Many of the factors considered in setting the original support order will be unchanged when the court considers a modification of spousal support. "For example, new findings stating the length of the parties' marriage, their standard of living during the marriage, or the relative extent of their education would add nothing new to the spousal support determination." Kucmanic,119 Ohio App.3d at 613. The court's only obligation in this context is to set forth the basis for its decision to modify with enough detail to allow proper appellate review. Id.
(citing Graham v. Graham [1994], 98 Ohio App.3d 396, 399-400); see, also, Carnahan v. Carnahan (1997), 118 Ohio App.3d 393,398-99 (while court must follow R.C. 3105.18(C) in considering new amount of spousal support, it need not list each factor and comment on the factors absent a request for findings of fact and conclusions of law); Fallang, supra, 109 Ohio App.3d at 549
(absent a request for findings of fact and conclusions of law, reviewing court will presume that trial court considered relevant factors in decision to modify support). In this case, the trial court provided adequate detail regarding its decision to reduce the appellant's support obligation to $600 per month.
The appellant argues that the trial court failed to consider several factors in its spousal support modification. First, the appellant emphasizes the court's finding that his income was reduced by roughly one-third, while his spousal support was reduced by only one-fourth. Although the appellant's income dropped by one-third, the court found that a reduction in spousal support by an equal percentage was not necessarily warranted under the circumstances. While the appellant's income has fallen to $29,056 annually, his financial circumstances are much better than those of the appellee, who remains unemployed and on medication for her bi-polar disorder. This consideration goes to the heart of the modification issue and provides ample support for the court's decision in this particular case. SeeKucmanic, supra, 119 Ohio App.3d at 614; see, also, Fallang,supra, 109 Ohio App.3d at 549 (notwithstanding an increase in obligee's income and decrease in obligor's, substantial gap in the parties' incomes weighed heavily against a reduction in spousal support payments). Moreover, the court's determination is reasonable in light of the fact that, in any event, the appellant's spousal support obligation terminates in less than one year under the terms of the divorce judgment. Cf. Burgessv. Burgess (Oct. 1, 1982), Lucas App. No. L-82-200 (no error to deny motion to terminate or modify alimony when alimony was to terminate at a certain date).
The appellant also contends that the court has failed to recognize a "reduction in the Appellee's needs." In support of this second argument, the appellant contends that (1) the appellee did not bother to apply for social security disability benefits for a long time and was ultimately "denied" them when she applied, (2) the appellee is living with her mother, (3) the appellee's mother has provided some financial support and allows the appellee use of a car, (4) a "friend" had previously provided the appellee with financial assistance, and (5) the appellee was approved for a Pell grant for educational purposes. None of the appellant's arguments, however, supports a conclusion that the trial court abused its discretion.
First, the record does not support the appellant's contention that the appellee was "denied" social security benefits. The very page of the hearing transcript cited by the appellant reveals that the appellee had applied for social security disability benefits and, as of the time of the hearing, was awaiting the status of her application. Moreover, the appellee's lack of social security benefits cutsagainst a further reduction in spousal support. The original divorce decree stated that spousal support "may terminate or be modified by the Court in the event the [appellee] would * * *receive social security benefits * * *." (Emphasis added.) The original order therefore contemplated a continuation of spousal support at the court-ordered level if the appellee did not
derive income from social security benefits. Thus, rather than supporting a downward modification of support, the fact that the appellee has not "received" benefits weighs against a modification. The appellant also implies that the appellee's delay in applying for social security disability benefits undermines the notion that she was actually disabled. Thus, because the appellee might not be disabled, the appellant infers that his spousal support obligation should be further reduced because the appellee's disability was "one of the major findings of the Court in originally ordering her alimony." However, we do not view the appellee's delay in applying for social security disability benefits as an implicit admission of non-disability. The appellee's testimony indicates that the delay in her application for benefits was attributable to her confusion regarding her eligibility. Nor do we view her delay in applying as an unreasonable attempt to maintain support at court-ordered levels. While the original divorce decree mentioned social security disability benefits as a possible source of income for the appellee, it did not state that the appellee was required to apply for them.
Moreover, the appellant's arguments concerning the scope of support provided by the appellee's mother do not call for a further reduction of support. The record shows that the appellant began living with her mother in Texarkana, Arkansas because she could not afford to pay rent anymore. This circumstance, as well as the appellee's receipt of financial support from her mother, was brought about by the appellant's failure to pay his support obligation. Thus, the benefits conferred by the appellee's mother did not constitute a source of income that demanded a further reduction in support. Similarly, the appellant's allegation concerning the appellee's past financial support from a friend does not undermine the court's decision. This argument by the appellant, which implies that the appellee has received income from a paramour, does not support a conclusion that the appellant's support obligation should be reduced further. The appellee testified that she had borrowed money from a past boyfriend, with whom she no longer has contact and from whom she no longer borrows money. Cf.Mottice v. Mottice (1997), 118 Ohio App.3d 731, 737 (finding no abuse of discretion in court's refusal to terminate spousal support for ex-wife despite fact that a friend subsidized her rent and frequently dined and traveled with her).
Finally, the appellee's receipt of a Pell grant provides no support for the appellant's argument. Testimony at the hearing indicated that the appellee's grant covered only books and tuition at Texarkana College. There was no evidence that the Pell grant provided funds to cover any of the appellee's living expenses. Thus, the appellee's receipt of the grant would not change her overall financial status such as to justify a further reduction in spousal support.
We find no abuse of discretion in the trial court's decision to modify spousal support to a sum of $600 per month. The appellant's first and second assignments of error are overruled.
 III.
In his third assignment of error, the appellant argues that the trial court erred in finding him in contempt. The court's contempt finding marked the second time that the appellant had been cited for the failure to pay spousal support. The appellant's only argument under this assignment is that he was financially unable to pay the support ordered by the court. This argument is meritless.
Failure to pay court-ordered spousal support is classified as a civil contempt. See Pugh v. Pugh (1984), 15 Ohio St.3d 136,139-40; Marden v. Marden (1996), 108 Ohio App.3d 568, 570. Because the nature of the contempt is civil, "willful disobedience" (i.e. intent) is not a necessary element. Pugh,15 Ohio St.3d at 140; Pedone v. Pedone (1983), 11 Ohio App.3d 164,165. However, inability to pay support is a valid defense in a contempt proceeding. Courtney v. Courtney (1984), 16 Ohio App.3d 329,334. The party who failed to comply with the court order to pay support bears the burden of proving an inability to pay. See Pugh, 15 Ohio St.3d at 140; State ex rel. Cookv. Cook (1902), 66 Ohio St. 566, paragraph one of the syllabus;Collins v. Collins (Aug. 22, 1995), Athens App. No. 95CA1661, unreported. We will not reverse a contempt sanction absent an abuse of discretion by the trial court. State ex rel. Ventronev. Birkel (1981), 65 Ohio St.2d 10, 11.
In this case, the appellant complains that his changed circumstances have resulted in a net income of $1,853.81 per month, with expenses totaling at least $1,040 per month. Thus, he claims he does not have an ability to pay $600 per month to the appellee. The trial court disagreed, noting that the appellant's current wife generates household income from her job and that the appellant therefore does not bear the entire burden of paying for his living expenses. We find no abuse of discretion in this determination. The trial court properly considered the income of the appellant's second wife in analyzing whether a substantial change in circumstances existed. Roach v. Roach (1989), 61 Ohio App.3d 315, 320. Moreover, the trial court properly considered the current wife's income in setting an appropriate and reasonable level of spousal support. Because the appellant cited various household expenses as a reason for his inability to pay, it was proper to consider the total household income, including the current wife's salary, in assessing the appellant's actual ability to pay. See Johnson v. Johnson (Sept. 30, 1997), Lake App. No. 96-L-171, unreported; Beard v. Beard (Apr. 23, 1992), Greene App. Nos. 91CA18 91CA34, unreported; Beyer v. Beyer (1979),64 Ohio App.2d 280, 283. The court's modified spousal support order merely sets a figure commensurate with the appellant's changed circumstances. Further, the trial court's decision does not appear inequitable even in light of the appellant's reduced salary. The appellant makes over $29,000 annually, while the appellant has no source of income and a current inability to work due to her bi-polar disorder. An obligation to pay $7,200 a year, which is tax deductible to the appellant, does not appear unreasonable, particularly in light of the fact that the appellant's obligation to pay spousal support terminates in less than a year under the terms of the original divorce judgment. We find no error in the trial court's determination that the appellant failed to meet his burden of proving an inability to pay.
The text of the appellant's third assignment of error indicates another argument, i.e. that the appellant cannot be held in contempt for failing to pay support because he had a motion to reduce or suspend support pending during the period for which he was in contempt. Inasmuch as the appellant fails to argue this issue, it is deemed waived. See App.R. 12(A). Moreover, the appellant was not relieved of his support obligation while the motion was pending. In the absence of a stay of its order, a court may enforce the order and find a party in contempt. See, e.g., Mason v. Mason (Mar. 31, 1999), Union App. No. 14-98-36, unreported. The third assignment of error is overruled.
Having overruled each of the appellant's assignments of error, we affirm the judgment of the Scioto County Court of Common Pleas.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Abele, J. and Evans, J.:
Concur in Judgment and Opinion.
For the Court
 BY: ___________________________ William H. Harsha, Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.
[1] Prior to the divorce judgment, the court had ordered the appellant to pay temporary spousal support.
[2] In April 1998, the magistrate issued a decision granting the appellee a lump sum judgment for arrearages due, but dismissed the appellee's motion for contempt because the appellant had not been properly served with the motion. The magistrate also dismissed the appellant's motion to "reduce or suspend" spousal support for failure to prosecute. Following objections by the appellant, however, the court set both motions for re-hearing, which resulted in the magistrate's August 1998 decision.
[3] The magistrate calculated this figure based on the appellant owing a support obligation of $800 per month from April 1997 through November 1997, for a total of $6,400. Due to the magistrate's retroactive reduction of the appellant's support obligation, however, the appellant owed only $600 per month from December 1997 through July 1998, for a total of $4,800. Thus, the appellant owed a total of $11,200, plus the processing charge, for his spousal support obligation covering April 1997 through July 1998.
[4] One of the aspects of the purge order, i.e. the payment of the court-ordered spousal support of $600 per month, is problematic. As we stated in Patel v. Patel (Mar. 23 1999), Athens App. Nos. 98CA29, 98CA30, unreported, a purge order may provide for suspension of a jail sentence on condition that the contemnor pay an arrearage; however, it may not regulate future conduct by conditioning suspension of a jail sentence on making payments on current support obligations. Accord Marden v.Marden (1996), 108 Ohio App.3d 568, 571; Tucker v. Tucker
(1983), 10 Ohio App.3d 251, 252. The record shows that the first contempt order in this case (which is not a subject of this appeal) similarly attempted to regulate future compliance with the spousal support order. However, since the appellant does not challenge this aspect of the case, we do not address it other than to caution the trial court that a contempt/purge order cannot be used to control future conduct.
[5] R.C. 3105.18(C) (1) states:
 In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support * * *, the court shall consider all of the following factors:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional condition of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.