DECISION AND JOURNAL ENTRY
{¶ 1} Appellant Mary O'Neill has appealed from a judgment of the Summit County Court of Common Pleas, Domestic Relations Division, that awarded Appellee Thomas Bowers an abatement in his child support obligation and granted Appellee Thomas Bowers' motion for a modification in his child support obligation. This Court affirms.
 I {¶ 2} On August 16, 1991, the divorce case of Appellant ("Mother") and Appellee ("Father") was transferred from Franklin County to Summit County. The divorce decree, which was granted on October 6, 1989, awarded custody of the couple's minor child Jessica, born on September 15, 1986, to Mother and ordered Father to pay child support. After the case transfer, Mother and Father engaged in consistent litigation concerning the support and care of Jessica. On December 11, 1997, Father's child support obligation was increased to $1,600 per month for the support of Jessica. The instant matter stems from Jessica leaving Mother's care and residence and moving in with Father in January 2002.
 {¶ 3} On January 3, 2002, Father filed a Motion to Reallocate Parental Rights and Responsibilities of the Minor Child, Jessica. Father moved the trial court to designate him residential parent and legal custodian of Jessica. Father requested that the trial court terminate his child support obligation and order Mother to pay child support to him. On January 12, 2002, Jessica began living with Father. On January 18, 2002, the trial court granted Father possession of Jessica, pending a hearing on February 5, 2002.
 {¶ 4} On January 29, 2002, before the scheduled hearing, the trial court granted Father continuing temporary possession of Jessica "until further order of [the court] after the hearing now scheduled for February 5, 2002." On February 11, 2002, the trial court named Father the temporary residential parent and ordered that Jessica be enrolled in Father's school district. Mother was granted "temporary standard companionship rights." The trial court also referred the family to Family Court Services for an evaluation, appointed a guardian ad litem and scheduled a settlement conference and an evidentiary hearing.
 {¶ 5} While Father had possession of Jessica and was caring for her, Mother continued to receive the $1,600 per month child support payments. On February 21, 2002, Father filed a motion asking the trial court to escrow the child support he was currently paying for Jessica. On June 7, 2002, the trial court ordered that the Child Support Enforcement Agency ("CSEA") "hold all child support payments in escrow until further order." Jessica returned to her mother's residence and care in the end of June 2002. On July 11, 2002, Father filed a voluntary dismissal of his motion to reallocate parental rights and responsibilities.
 {¶ 6} On July 15, 2002, the trial court issued an agreed order stating that Mother "shall continue to be the residential parent and legal custodian of [Jessica.]" Father then filed a motion to establish support for the time Jessica was in his possession and care or in the alternative to receive credit on his child support obligation for the time Jessica was in his possession and care.
 {¶ 7} On August 28, 2002, while Father's motion for support or a credit was still pending, Mother filed a motion to modify support. Father filed a motion to modify support on September 16, 2002.
 {¶ 8} On October 24, 2002, the trial court ordered CSEA to cease escrowing child support and to forward all such monies to Mother. Upon receipt of the trial court's decision, Father filed a motion for relief from judgment, to which Mother replied with a motion in opposition.
 {¶ 9} On July 22, 2003, the Magistrate issued a decision on the parties' motions to modify support. The Magistrate's findings of fact stated:
"4. The [Mother] is now the residential parent. However, Jessica did live with [Father] from January 12 to June 24, 2002. [Father] was designated the temporary residential parent during this period. Legal custody was subsequently restored to [Mother] by agreed entry filed July 15, 2002.
"5. The most recent support order provides that [Father] is to pay [Mother] $1,600 per month. J.E., Dec. 11, 1997.
"* * *
"7. [T]he magistrate finds that [Father's] support order should abate for the period that he was the temporary residential parent; that [Father] is not entitled to support from [Mother]; and that the support order should be modified to $1,270.25 per month effective September 15, 2002.
"* * *
"9. As a matter of law, child support should terminate if legal custody of the child is changed. R.C. 3119.88(H).
"10. The residential parent is required by law immediately to notify the C.S.E.A. if any reason exists for which a child support order should terminate. R.C. 3119.87. In fact, willful failure to do so is contempt of court. Id.
"11. [Mother] did not notify the C.S.E.A. that legal custody of Jessica had changed. If she had done what the law mandates her to do, the issue presented here would have been resolved a long time ago.
"12. Having failed to perform her legal duty, [Mother] will not now be heard to complain that the correct result is imposed belatedly. Cf. Peterson vs. Hunt (Ohio App.), No. 1-98-25, 3d Dist., Allen County, Ohio, Oct. 14, 1998 (time in obligor's custody may be used as a credit against arrearages).
"* * *
"15. Jessica's time with [Mother] is not significantly different from standard parenting time, especially since it covers some vacation periods. It does not begin to justify an order requiring the residential parent to pay support to her.
"16. [Mother] claims that she spent $26,745 on Jessica's expenses during the relevant period. Almost half of these expenditures include such items as her own vacations with Jessica, travel expenses to see her, and attorney's fees and costs to litigate the motions presented to this court. These items would never be counted as child support from a nonresidential parent and do not justify a continuing child support order.
"17. Another significant expenditure is the purchase of an automobile and car insurance. These would be regarded as gifts from any other nonresidential parent."
 {¶ 10} On August 4, 2003, Mother objected to the Magistrate's decision. The trial court overruled Mother's objections on January 8, 2004. The trial found that Father was the legal custodian of Jessica from January 12 through June 24, 2002 and as such was entitled to an abatement in his child support obligation. The trial court determined that such an abatement was not a retroactive modification of support. The trial court found that:
"In this case, Mother had the burden to notify the CSEA that her child support order was terminable by statute. The CSEA in turn would have filed the requisite termination order with this Court. As a result, this Court would have terminated Father's child support obligation for the time that Father was the legal custodian but for Mother's failure to report.
"It was Mother's inaction that resulted in the absence of a termination order. If Mother would have exercised the mandatory procedure in reporting to the CSEA that Jessica was no longer in her custody, Father's child support obligation would have terminated. Therefore, this Court denies Mother's objections. To sustain such would result in not only an inequity, but also a result that is contrary to the intent of the Ohio Revised Code sections that govern the termination of support."
 {¶ 11} In regards to the modification, the trial court found that the Magistrate analyzed the expenses necessary to maintain Jessica in her current standard of living and that it could not conclude that the Magistrate's calculation of support was incorrect. The trial court ordered:
"1. The [Father's] support obligation is abated effective January 12, 2002, when he became Jessica's legal custodian and began providing the primary home for her.
"2. The previously existing support order of $1,600 per month is reinstated effective July 15, 2002, when legal custody was restored to the mother.
"3. The [Mother's] motion to modify support is denied.
"4. The [F]ather's motion to modify support is granted. Effective September 16, 2002, the [F]ather's support obligation is reduced to $1,370.25 per month plus processing fee. The total amount due is $1,397.15 per month. * * *"
 {¶ 12} Mother has timely appealed the trial court's decision, asserting two assignments of error.
 II Assignment of Error Number One
"The trial court erred in abating [father's] child support obligation for the period january 12, 2002 through july 14, 2002."
 {¶ 13} In her first assignment of error, Mother has asserted that the trial court had no authority to abate, or as she classifies it retroactively modify, Father's child support for the period of time Jessica was living with him. Specifically, Mother has argued that even if the trial court had the authority to issue the abatement, it was not justified because legal custody never changed. We disagree.
 {¶ 14} "A trial court's decision regarding child support obligations falls within the discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion." Pauly v. Pauly (1997), 80 Ohio St.3d 386, 390, citing Booth v. Booth (1989), 44 Ohio St.3d 142, 144. "Since it is axiomatic that a trial court must have discretion to do what is equitable upon the facts and circumstances of each case, it necessarily follows that a trial court's decision in domestic relations matters should not be disturbed on appeal unless the decision involves more than an error of judgment." Booth,44 Ohio St.3d at 144 (citation omitted). Matters concerning child support require a review with common sense and fundamental fairness. Id. Accordingly, this Court will review the trial court's decision awarding Father an abatement and only reverse if we find that the trial court was unreasonable, arbitrary or unconscionable. Smyers v. Abramovich (March 7, 2001), 9th Dist. No. 20124, at 3, quoting Blakemore, 5 Ohio St.3d at 219. This Court may not substitute its judgment for that of the trial court. Berk v. Matthews (1990), 53 Ohio St.3d 161, 169.
 {¶ 15} Pursuant to R.C. 3119.87:
"The parent who is the residential parent and legal custodian of a child for whom a child support order is issued * * * immediately shall notify * * * the child support enforcement agency administering the child support order of any reason for which the child support order should terminate. With respect to a court child support order, a willful failure to notify the child support enforcement agency as required by this division is contempt of court."
 {¶ 16} R.C. 3119.88 provides a list of reasons why support should terminate. The statute states "[r]easons for which a child support order should terminate include all of the following:" and then the statute provides several reasons to terminate child support. R.C. 3119.88. R.C. 3119.88(H) lists "[c]hange of legal custody of the child" as a reason to terminate child support. R.C. 3119.88(H).
 {¶ 17} This Court notes that R.C. 3111.23(E)(4)(a), repealed effective March 22, 2001, formerly regulated this area and that under that statute "a change of legal or physical custody" required termination of child support. However, this Court does not find such a change critical to the disposition of the instant matter because we find the statute is not an exhaustive or exclusive list and that a trial court has the discretion to apply the statue to other factors or circumstances it deems relevant. Specifically, this Court finds that R.C. 3119.88 lists nine circumstances when a trial court "should terminate" child support, but said circumstances are not the only reasons a trial court can terminate child support.[1] Assuming this Court agreed with Mother's argument that Father only obtained possession of Jessica, not custody, and if the trial court had made no reference to a change of "legal custody," this Court finds that the facts of this case, specifically, the lengthy time Jessica lived with Father and the numerous court journal entries giving Father possession of Jessica, were the equivalent of a change of legal custody. Therefore, Father's possession could trigger R.C. 3119.87.
 {¶ 18} While the foregoing establishes this Court's position on lengthy possession and R.C. 3119.87, we must review the record as a whole to determine whether only legal "possession" of Jessica changed or whether legal "custody" also changed. If a change of legal "custody" is found then this matter is directly within the purview of R.C. 3119.87.
 {¶ 19} In the July 22, 2003 Magistrate's Decision, the Magistrate found that Father "was designated the temporary residential parent" of Jessica and that "[l]egal custody was subsequently restored to [Mother] by agreed entry filed on July 15, 2003." Such a statement implies that at some point Mother lost legal custody and Father obtained not only possession, but legal custody. In the January 8, 2004 decision overruling Mother's objections to the Magistrate's Decision, the trial court stated that Father became Jessica's "legal custodian" on January 12, 2002, which also implies that Father enjoyed more than "possession" of Jessica. We find that the trial court took the position in its opinions and application of R.C. 3119.87 and R.C.3119.88 that legal custody of Jessica did change and as a result of that change Mother was obligated to inform CSEA and failed to do so. We find that the trial court did not abuse its discretion in applying R.C. 3119.87 and R.C. 3119.88 to Mother. We agree with the trial court that Mother should not benefit from her failure to follow R.C. 3119.87.
 {¶ 20} Mother also argues that the trial court abused its discretion because the abatement was a retroactive modification. Initially, this Court notes that while a modification of child support normally becomes effective the date the motion was filed, we have found that under certain special circumstances a retroactive modification is permitted. See Sprankle v. Sprankle
(Mar. 25, 1998), 9th Dist. No. 2678-M; Zaccardelli v.Zaccardelli (July 26, 2000), 9th Dist. No. 19894; Bender v.Bender (July 18, 2001), 9th Dist. No. 20157. However, our prior authorization of retroactive modifications does not dispose of the case at hand because we find that the abatement Father received for the time period Jessica was in his care and possession was not a retroactive modification.
 {¶ 21} This Court finds that contrary to Mother's arguments, Father did not receive a retroactive modification in his child support obligation for the time period Jessica lived with him. An abatement is a reduction in value or amount. See Merriam-Webster Online Dictionary (2004), abatement-abate, http://www.mw.com (30 Nov. 2004). The trial court gave Father a reduction from January 12 to June 24, 2002 in the amount of child support he owed because Jessica had been living with him during that time period. The trial court found that Father was entitled to a credit in his child support obligation because he was the legal custodian of Jessica and was providing the primary home for her.
 {¶ 22} Awarding an abatement or a credit of a child support obligation to a parent who was not originally given custody of the child but later obtains possession or custody is not a retroactive modification. It is well established that "[t]he purpose of child support is to support the child." Gartner v.Gartner (July 26, 1984), 10th Dist. No. 83AP-847, 1984 Ohio App. LEXIS 10483, at *6. Therefore, the trial court was within its discretion to grant Father an abatement for the time period Jessica was in his possession and custody. See Peterson v. Hunt
(Oct. 15, 1998), 3rd Dist. No. 1-98-25, 1998 Ohio App. LEXIS 5092, at *4 (finding that application of a credit of child support obligation for when child lived with non-custodial parent was not a retroactive modification); Johnson v. Johnson, 3rd Dist. No. 14-03-32, 2003-Ohio-6710, ¶ 13 (finding that credit for child support obligation was not a retroactive modification). The trial court heard testimony from Father and Mother regarding the length of time Jessica lived with her Father, the amount of visitation Mother exercised, and the expenses related to caring for Jessica. Based on that testimony and the accompanying exhibits, the trial court determined that Father was entitled to the abatement. This Court cannot conclude that the trial court's decision was an abuse of discretion. The trial court properly applied R.C. 3119.87 and properly awarded Father an abatement. Accordingly, Mother's first assignment of error is without merit.
 {¶ 23} Assignment of Error Number Two
"The trial court erred in denying [mother's] motion to modify child support and in granting [father's] motion to reduce child support."
 {¶ 24} In her second assignment of error, Mother has argued that the trial court erred in reducing, rather than increasing, Father's child support obligation. Specifically, Mother has argued that the trial court improperly calculated the income of both parties and did not consider the costs of raising Jessica. We disagree.
 {¶ 25} A trial court possesses broad discretion when modifying child support orders, and "the finding as to whether there has been a change in circumstances that, ultimately, warrants a modification or termination will not be reversed absent an abuse of discretion." Mottice v. Mottice (1997),118 Ohio App.3d 731, 735, see, also, Julian v. Julian, 9th Dist. No. 21616, 2004-Ohio-1430, at ¶ 4. As previously stated, an abuse of discretion is more than an error in judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 26} When a party seeks modification of an existing child support order, the trial court is to recalculate the support using the appropriate child support calculation worksheet and schedule. R.C. 3119.79(A). A change of circumstances warranting a modification is found if the recalculated amount is more or less than ten percent of the existing obligation. Id.
 {¶ 27} The amount of child support calculated pursuant to the basic child support schedule and applicable worksheet is rebuttably presumed to be the correct amount of child support due. R.C. 3119.03. This Court has held, however, that R.C.3119.22 allows a court to order child support in an amount that deviates from the calculation obtained from the child support schedule and applicable worksheet, if after considering the factors and criteria set forth in R.C. 3119.23, it determines (1) that the amount calculated would be unjust or inappropriate and (2) that the amount would not be in the best interest of the children. Brown v. Brown, (Jan. 22, 2003), 9th Dist. No. 02CA0030, at 5.
 {¶ 28} Another exception exists when the income of the parents exceeds $150,000. Pursuant to R.C. 3119.04:
"If the combined gross income of both parents is greater than [$150,000] per year, the court, with respect to a court child support order * * * shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court * * * shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of [$150,000], unless the court * * * determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If the court * * * makes such a determination, it shall enter in the journal the figure, determination, and findings." R.C. 3119.04(B).
 {¶ 29} As this Court stated in Berthelot v. Berthelot:
"[W]hen the income of the parents is greater than $150,000, the appropriate standard for the amount of child support is that amount necessary to maintain for the children the standard of living they would have enjoyed had the marriage continued."Berthelot v. Berthelot, 154 Ohio App.3d 101, 2003-Ohio-4519, at ¶ 24. (Quotations and citations omitted).
The trial court recognized that this case involved parents who earned over $150,000 and that child support was not automatically capped at the guideline amount. After the trial court stated that "child support should be set at an amount necessary to maintain the standard of living the children would have enjoyed had the marriage continued," it found that:
"In this case, [the Magistrate] analyzed the expenses necessary to maintain Jessica in her current standard of living. After a review of the transcript and Magistrate's Decision, this Court cannot conclude that [the Magistrate's] calculation of support is incorrect."
The trial court attached the requisite child support guideline worksheet to its opinion, in which the Magistrate had determined that Father's total gross income was $226,328.33 and that Mother's total gross income was $113,412.00.
 {¶ 30} When reviewing the decision of the trial court, this Court must also look to the decision of Magistrate. After hearing testimony from both parties and reviewing numerous exhibits, the Magistrate found that:
"22. [Father] earned salary of $153,528 per year averaged over a period of the last three years.
"23. [Father] had interest income of $1,082 in 2002. It was higher in prior years. Since interest is now at a 40-year low, the higher amounts are not relevant to this calculation.
"24. [Father] had Subchapter S distributions of $71,718.33 per year averaged over a period of the last three years.
"25. [Mother's] 2002 employment income was $113, 411.78.
"26. [Mother] provides health care insurance for Jessica. Her marginal out-of-pocket cost is $3,000 per year."
"* * *
"28. The amount of support that would be ordered for the father to pay if the parents' combined gross income were $150,000 is $1,013.53 per month. There are no unusual circumstances that would justify a lower amount.
"29. Jessica's countable expenses for the one-year period from the second half of 2002 and the first half of 2003 amounted to $24,630. See Ex. 20. Attorney fees and all but $100 of medical expenses were eliminated from the last two columns of [Mother's] listed expenses. Medical expenses are figured separately, and the attorney fees were not Jessica's expense.
"30. [Father's] share of the expenses is $16, 442.99 ($24, 630 x .6676). This is $1,370.25 per month, an amount that is just and equitable to Jessica and her parents. * * *
"31. [Mother] gains slightly more than the father from claiming Jessica as a dependent for income tax purposes. The foregoing analysis was made under that assumption."
 {¶ 31} After reviewing the record, this Court finds that the trial court did not abuse its discretion in granting Father's motion to modify support and denying Mother's motion to modify support. This Court cannot conclude that the trial court's decision reducing the amount of child support was unreasonable, arbitrary or unconscionable. The record establishes that the trial court clearly applied the appropriate statutes and case law to the present facts when it modified Father's child support obligation. Based on the foregoing, Mother's second assignment of error lacks merit.
 III {¶ 32} Mother's first and second assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Carr, P.J. Batchelder, J. Concur
[1] While this Court finds that R.C. 3119.88 does not provide an exhaustive list of reasons to terminate child support and that a trial court has discretion to determine reasons not provided by the statute, it does not follow that a trial court can make a per se finding of contempt on an obilgee based on an unlisted reason; such a finding would be a violation of an obligee's due process rights.