MOTTICE, Appellee,

v.

MOTTICE, Appellant.

[Cite as *Mottice v. Mottice* (1997), 118 Ohio App.3d 731.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 17906.

Decided March 26, 1997.

*Robert C. Hunt,* for appellee.

*David A. Lieberth,* for appellant.

SLABY, Judge.

Appellant, James Mottice ("Husband") appeals from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division, denying his motion to terminate and/or reduce his obligation to pay alimony to his former wife, Janet Mottice ("Wife"). We affirm.

Husband and Wife were married in 1954. In the beginning years of their marriage, Wife worked while Husband attended medical school. She was a nurse, and he would soon become a doctor. In 1961, Husband established his medical practice and Wife quit her outside employment to tend to their family on a full-time basis. By this time, the couple had five children.

The parties were divorced in 1982, ending their twenty-eight-year marriage. The separation agreement, incorporated into the divorce decree, directed the marital property to be divided equally. It also provided that Wife was to receive sustenance alimony of $2,000 per month. In their agreement, the parties did not specify a date certain for a reduction or termination of Husband's support

obligations. Rather, they allowed for a modification or cessation only in the event of certain enumerated contingencies, in particular, Wife's remarriage, death, or a court order.

In 1995, Husband moved for such an order. He insisted that his support payments to Wife should be terminated or at least reduced. Wife disputed the reduction or termination and, in addition, contended that any adjustment should be in her favor and requested an increase in the alimony. After an evidentiary hearing on the matter before a magistrate, both motions were denied. Husband filed objections to the magistrate's findings. The trial court overruled the objections and adopted the decision. Husband now appeals, assigning six errors. In order to facilitate our review, we have rearranged the alleged errors and will address them together.

## ASSIGNMENT OF ERROR III

"The trial court erred as a matter of law and abused its discretion by affirming the magistrate's finding that continued payment of alimony to [Wife] was 'necessary.' The trial court applied its own definition instead of the definition mandated by this court in *Chaudhry v. Chaudhry*."

## ASSIGNMENT OF ERROR IV

"The trial court erred by affirming the magistrate's findings about the relative lifestyles of the parties. The finding is against the manifest weight of the evidence."

## ASSIGNMENT OF ERROR VI

"The trial court erred by affirming the magistrate's decision which failed to find that [Wife] had established a relationship that evidenced the continuity and permanency which would have supported a termination of alimony. The court's failure to make such a finding is an abuse of discretion and against the manifest weight of the evidence."

## ASSIGNMENT OF ERROR I

"The trial court erred as a matter of law by affirming the magistrate's decision that the court cannot address [Husband's] proposed retirement until it actually occurs."

## ASSIGNMENT OF ERROR II

"The trial court erred as a matter of law and abused its discretion by affirming the magistrate's decision continuing alimony. Once [Husband's] earnings cease, the only fund out of which alimony may be paid is property previously divided between the parties. It is unlawful to redivide the marital estate once a property division has occurred."

## ASSIGNMENT OF ERROR V

"The trial court erred by affirming the magistrate's findings regarding the current health of the parties. The magistrate's failure to make findings about [Husband's] failing health constitute [sic] an abuse of discretion and is against the manifest weight of the evidence."

In all six assignments of error, which will be discussed more specifically below, Husband essentially claims that the trial court erred in adopting the magistrate's decision, which found that a substantial change in circumstances had not occurred since the divorce to warrant the termination or reduction of his alimony obligation.

In seeking a modification or cessation of alimony, the moving party must not merely demonstrate that there has been a change in the circumstances of either party, but must also prove that such a change was substantial. See *Towne v. Towne* (Nov. 27, 1996), Summit App. No. 17772, unreported, at 3, 1996 WL 688155; *Coggins v. Coggins* (Feb. 10, 1997), Butler App. No. CA96–07–145, unreported, 1997 WL 50158. See, also, R.C. 3105.18. In fact, in order to merit any adjustment, the change in the parties' economic situation must be of such a degree as to be described as "drastic." *Towne, supra.* See, also, *Wolfe v. Wolfe* (1976), 46 Ohio St.2d 399, 419, 75 O.O.2d 474, 484–485, 350 N.E.2d 413, 425–426. Moreover, the moving party bears the burden in establishing that the change was not contemplated at the time of the divorce, or whenever the current support payment was determined. See *Bingham v. Bingham* (1983), 9 Ohio App.3d 191, 193, 9 OBR 302, 303–304, 459 N.E.2d 231, 233–234; *Towne, supra; King v. Kastelic* (June 1, 1994), Summit App. No. 15998, unreported, 1994 WL 232892.

In determining the equity of any alteration or termination, all relevant factors must be considered, including those found in R.C. 3105.18. Because the original alimony order was filed under the old statute, it is that version which must be applied in this case. See *Chaudhry v. Chaudhry* (Apr. 8, 1992), Summit App. No. 15252, unreported, at 6, 1992 WL 74204. Therefore, a court will look, *inter alia,* to those factors enumerated in Division (B). Cf. R.C. 3105.18(C) (1993 version, Sub.H.B. No. 173, 145 Ohio Laws, Part III, 4831, 4846). See *King, supra.* While R.C. 3105.18(B) details the criteria to be utilized in first designating the nature

and amount of alimony, it additionally provides guidance in determining whether a substantial and unintended change has occurred as well. See *King, supra.* Cf. R.C. 3105.18(C)(1) (1993 version). Indeed, in ascertaining a change, a court must necessarily compare the circumstances at the time of the original designation with the present. Nevertheless, some of the factors entitled to greater weight in setting the terms of spousal support are deserving of lesser weight in evaluating a request for modification or termination. See *id.* These factors consist of the parties' current and potential earnings, age and health, expenses, lifestyle during the marriage, and retirement benefits. See R.C. 3105.18(B). Furthermore, the standard to be assessed, and to which these statutory determinants will be applied, is the abiding "need" for alimony, rather than the "appropriateness" of the continuing support payment. Compare R.C. 3105.18(B) with 3105.18(C)(1). See, also, *Towne, supra,* at 10, citing *Chaudhry, supra.*

Given the application of the statutory scheme and assuming that the factual inquiries are supported by competent credible evidence, the finding as to whether there has been a change in circumstances that, ultimately, warrants a modification or termination will not be reversed absent an abuse of discretion. See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 218, 5 OBR 481, 481–482, 450 N.E.2d 1140, 1141. See, also, *Chaudhry, supra.* For an appellate court to find an abuse of discretion, the record must show more than an error of judgment on the part of the trial court; the record must show that the trial court's decision was unreasonable, arbitrary, or unconscionable. See *Blakemore* at 219, 5 OBR at 482–483, 450 N.E.2d at 1141–1142; *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028, 1030–1031.

In the case *sub judice,* Husband contends that (1) the wrong statutory standard was applied, (2) the findings concerning the lifestyles of the parties was incorrect, (3) the relationship between Wife and her male friend should have been given greater weight, (4) Husband's reduced earnings in retirement could and should have been determined, and (5) in the consideration of his retirement earnings, a certain account should have been excluded due to the prior property division between the parties at the time of the divorce, and (6) the health of Husband was not properly evaluated. After a thorough review of the record, we reject each contention in turn.

The parties were married almost three decades. In the early years of their lives together, Wife put Husband through medical school. She then undertook the role as primary caretaker of their five children. When they divorced, both Husband and Wife were forty-nine years old; both parties are now over sixty. At the time of the divorce, Husband had annual earnings in excess of $60,000. He presently earns double that amount, approximately $120,000 before taxes. He also accumulates substantial sums of tax-deferred income from his $1,000,000

retirement account, which represents a major share of his former marital property. In 1995, Husband earned about $50,000 from this account. The foregoing income, after deducting for taxes along with the personal expenses of Husband and those of his second wife, but excluding alimony, nets Husband $6,000 plus per month.

Wife's financial situation is less secure. In contrast to Husband, she no longer works in the medical field due to her failing health. In addition to her alimony, she has recently begun receiving $230 per month in social security. She, too, has former marital assets that she has invested, grossing more than $8,000 annually in interest and dividends. She also has a male friend, who is both her landlord and former employer. They frequently go to dinner, and have traveled together on vacation. Her former company continues, temporarily, to provide her with health insurance costing $160 per month, and her rent has not been raised in some years. She pays $400 for housing monthly, and admits that this amount is probably less than fair market value. In her monthly expenses, Wife lists nothing for incidentals, entertainment, or donations. Even without including as expenses the contributions from her friend, her expenses exceed the alimony payments.

First, the trial court properly recognized the statutory requirement that the alimony be "necessary," and looked to whether the circumstances under which the originally agreed upon payment for Wife's sustenance had substantially changed in a way unintended by the parties. In *Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 69, 554 N.E.2d 83, 88–89, the Supreme Court of Ohio explained that the primary purpose of sustenance alimony is to assist the divorced spouse during the period necessary to permit him or her to become self-supporting at a standard of living comparable to what the parties had attained during the marriage. See, also, *King, supra.* The *Kunkle* court recognized, nonetheless, that if such a goal is not realistic or unlikely due to age, ability, duration of the marriage, or other circumstances, then an award for sustenance alimony for life would be proper. *Id.*

Wife has physical health problems and with her age, the magistrate determined that she "is not a good candidate for a new career." The magistrate also examined Wife's expenses and the hearing testimony and determined that her lifestyle appears "to be in line with the one established during the marriage." Moreover, in considering and discounting her outside income, the magistrate also appreciated the intent of the parties in their earlier agreement for $2,000 in sustenance alimony which allowed Wife to work up to twenty hours per week without affecting the alimony. At her last rate of pay as a nurse, Wife could have made as much as $13,000 per year. Analyzing this figure and the increased cost of living in the thirteen years since the divorce in relation to the increases in her

income, the magistrate determined that her "outside income does not rise to the level where it would be recognized as a factor to reduce her alimony." The magistrate correctly regarded the necessary test and, as explicated more fully below, its application was not an abuse of discretion.

Second, our careful review of the record reveals that the magistrate's conclusions concerning the parties' lifestyles, a relevant factor pursuant to R.C. 3105.18, are supported by competent, credible evidence. Thus, there was no error in the trial court's acceptance of these findings.

■ Third, we can find no reason to disturb the magistrate's evaluation of the aid to Wife by the man whom she frequently dines and travels with, and who was a long-time family friend. As Wife testified at the hearing, her friend subsidizes her rent and, through his company where she had previously worked, has continued her health insurance. Wife and her friend do not cohabitate, nor has any claim of cohabitation been made in this case. We also note that Husband did not make spousal support contingent upon cohabitation. Cf. *Gatto v. Gatto* (July 19, 1995), Summit App. No. 17121, unreported, 1995 WL 434403. See, also, *Towne, supra.* The magistrate stated that Wife had not claimed expenses for the items that her friend is now providing, and significantly, that "the extent to which [her friend's] voluntary contributions actually reduce [Wife's] expenses * * * has already been factored into the assessment of her need. Her expenses would otherwise be higher."

■ Fourth, while Husband stated at the hearing that he is considering retirement, he failed to submit sufficient evidence on the matter. His request for relief from alimony spanned a period of about six months. In that time period, he provided no details as to his social security or other benefits, his expenses, and for that matter, when exactly his retirement was going to take place. Consequently, the magistrate found that without any "evidence of his expected income and expenses on retirement * * * there is no present information on which an assessment could be made of his future circumstances." While we do not, and need not, decide that an anticipated retirement may never constitute the basis for a reduction or termination of spousal support, we agree with the findings in this particular case.

Fifth, Husband complains that his retirement account, a former marital asset, should not be utilized to pay his Wife's support despite the express statutory language to the contrary. See R.C. 3105.18(B)(3). See, *e.g., Wiggins v. Wiggins* (Sept. 27, 1993), Warren App. No. CA92–12–110, unreported, 1993 WL 386305; *Seer v. Seer* (Sept. 18, 1991), Montgomery App. No. 12332, unreported, 1991 WL 207290. Because his plans to retire do not justify an anticipatory reduction in

alimony, we need not consider Husband's assertion regarding his source of funds for this payment. See App.R. 12(A)(1)(c).

■ Finally, as to Husband's claim of failing health, we find that it need not have been specified because it was implicitly considered in making the ruling concerning Husband's possibility of retirement. After two days of hearing testimony, the magistrate issued a nine-page decision, containing thirty-four itemized paragraphs detailing the facts and circumstances pertaining to every statutory factor. The only relevant factor not clearly addressed was the health of Husband. See R.C. 3105.18(B)(2). We have repeatedly pronounced that there need not be "individual findings of fact as to each factor, so long as there is some evidence in the record going to each one." See, *e.g., Young v. Young* (Dec. 29, 1993), Lorain App. No. 93CA005554, unreported, at 3–4, 1993 WL 548765; *Bettis v. Bettis* (Feb. 12, 1997), Medina App. No. 2565–M, unreported, at 3, 1997 WL 72094. See, also, *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 518 N.E.2d 1197, paragraph two of the syllabus. Husband, although not providing any other evidence, testified as to his deteriorating mental and physical condition in relation to his potential retirement. As the magistrate found that Husband had not delineated his earnings and expenses in retirement, there was no need to articulate his health problems upon which his alleged retirement was partially predicated.

In light of the foregoing, it was not an abuse of discretion to hold that Husband failed to satisfy the required nature and degree of change in the circumstances of himself and Wife since their divorce. It was neither unreasonable, arbitrary, nor unconscionable to deny the requested termination or reduction in alimony. Husband's assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

DICKINSON, P.J., concurs.

QUILLIN, J., concurs in judgment only.