DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant/Cross-Appellee, Maureen A. Berthelot, has appealed from two post-decree orders of the Summit County Court of Common Pleas, Domestic Relations Division, which were entered on April 27, 2004 and July 11, 2005. Appellee/Cross-Appellant, Michael J. Berthelot, has cross-appealed from the July 11, 2005 order. The challenged orders relate to the modification of child support, the modification of spousal support, and an award of attorney fees. This Court affirms in part, reverses in part, and remands for further proceedings consistent with this opinion.
 I {¶ 2} Appellant/Cross-Appellee, Maureen A. Berthelot ("Maureen"), and Appellee/Cross-Appellant, Michael J. Berthelot ("Michael"), were married on February 14, 1976. They are the parents of five children, all now emancipated. Maureen filed for divorce on February 10, 1994, and a divorce was granted on October 7, 1996. In the divorce decree, the trial court equally divided the marital assets and marital debt, awarded Maureen spousal support of $6,000 per month for 47 months, and awarded Maureen child support of $2,127.59 per month per child for four unemancipated children. Michael was also ordered to pay private school tuition for the four youngest children at their then respective schools, and to provide health insurance for the children during their minority. A trust fund of approximately $200,000 was created for the college education of the children.
 {¶ 3} This is the third appeal in this divorce action. Following the first appeal, Berthelot v. Berthelot (Apr. 15, 1998), 9th Dist. No. 18331 ("Berthelot I"), the trial court extended the spousal support award to 60 months. Following the second appeal, Berthelot v. Berthelot, 158 Ohio App.3d 101,2003-Ohio-4519 ("Berthelot II"), the trial court increased child support to $4,218.08 per month per child, denied motions
to modify spousal support, and ordered Michael to pay attorney fees in the amount of $68,989. Because of an existing overpayment of child support in the amount of $30,168.58, Michael's resultant obligation was said to be $38,820.42.
 {¶ 4} Maureen has now appealed for a third time and Michael has cross-appealed. Maureen has assigned ten errors for review, and Michael has cross-assigned two errors for review. Additional facts will be included as necessary to the discussion of each assignment of error. Some assignments of error have been combined because they are related.
 II Assignment of Error Number One
"THE TRIAL COURT ERRED IN CALCULATING APPELLEE'S CHILD SUPPORT OBLIGATION BY DEDUCTING $72,000 FROM HIS GROSS INCOME FOR HIS SPOUSAL SUPPORT PAYMENTS TO APPELLANT AND ADDING THAT AMOUNT TO APPELLANT'S GROSS INCOME, CONTRARY TO FORMER OHIO REVISED CODE SECTION 3113.215."
 Assignment of Error Number Two
"THE TRIAL COURT ERRED IN FINDING AN OVERPAYMENT OF APPELLEE'S CHILD SUPPORT OBLIGATION BY APPLYING OHIO REVISED CODE SECTION3119.02 IN DEDUCTING $72,000 FROM APPELLEE'S GROSS INCOME FOR SPOUSAL SUPPORT PAYMENTS TO THE APPELLANT, AND ADDING THAT AMOUNT TO APPELLANT'S GROSS INCOME, CONTRARY TO THIS COURT'S MANDATE"
 {¶ 5} In her first two assignments of error, Maureen has challenged the trial court's treatment of spousal support on the child support worksheet when the court was determining Michael's child support obligation. Maureen has essentially argued that the trial court erroneously followed the procedures of current Chapter 3119, when it should have complied instead with the predecessor statute, R.C. 3113.215. The effect of so doing, she has claimed, is to incorrectly include $72,000 of spousal support in Maureen's gross income, while deducting the same amount from Michael's gross income. This Court agrees.
 {¶ 6} R.C. 3113.215 was repealed, effective March 22, 2001, and replaced by R.C. 3119.01 et seq. The particular provisions of R.C. 3113.215 which are at issue governed the procedures for completing the child support worksheets and were replaced by R.C.3119.022. Differences between the two statutes in relation to the manner in which they direct the completion of child support worksheets are relevant to the present issue.
 {¶ 7} Pursuant to former R.C. 3113.215, the income of the obligee did not include spousal support from the other party to the proceeding, and one could obtain an income adjustment for payment of spousal support only if the obligee was a "former spouse," construed as a former spouse who is not a party to the proceeding. See former R.C. 3113.215(A)(2) (stating that gross income includes "spousal support actually received from a person not a party to the support proceeding for which actual gross income is being determined"). See, also, Ruttman v. Ruttman
(Sept. 28, 1995), 3rd Dist. No. 16-95-2; Paulus v. Paulus
(1994), 95 Ohio App.3d 612, 615, overruling Kundrat v. Kundrat
(Feb. 26, 1993), 11th Dist. No. 92-L-097; Weddell v. Weddell
(June 29, 1994), 2d Dist. No. 14274; Bailey v. Bailey (Sept. 22, 1992) 10th Dist. No. 92AP-446; and Parzynski v. Parzynski
(6th Dist., 1992), 85 Ohio App.3d 423, 434-435 (all following this interpretation of R.C. 3113.215). See, also, Taylor v.Taylor, 7th Dist. No. 01-A1-7, 2002-Ohio-6884, at ¶ 6 (indicating that this is the general rule on interpretation of R.C. 3113.215).
 {¶ 8} Replacement statute, R.C. 3119.022, effective March 22, 2001, altered this methodology by requiring an obligee party to include all spousal support actually received under the category of "other annual income," at line six of the child support worksheet. See R.C. 3119.01(C)(7). At the same time, a party obligor may obtain a corresponding decrease, i.e. an adjustment to income, on line ten of the worksheet, for the amount of spousal support paid to "any spouse or former spouse." See, e.g.Zimon v. Zimon, 9th Dist. No. 04CA0034-M, 2005-Ohio-271, at ¶ 7.
 {¶ 9} The present case was initially filed on February 10, 1994. Maureen filed a motion to modify child support on June 2, 1998, and the resultant decision which forms the basis of this appeal was entered on July 11, 2005. At the time of that decision, the trial court included Michael's spousal support payments in Maureen's gross income, and excluded such payments from Michael's gross income on the child support worksheet. The question before this Court is whether the trial court properly relied upon new R.C. 3119.022, or should have applied the procedures of former R.C. 3113.215.
 {¶ 10} Michael has not disputed the application of the two relevant statutes, but has argued that questions of child support are reviewed under an abuse of discretion standard, and, in that child support statutes are remedial rather than substantive, he claims that R.C. 3119.022 should be applied retroactively to this case. Michael has cited Taylor v. Taylor, 7th Dist. No. 01-A-17, 2002-Ohio-6884 in support of his position. While theTaylor court did find that R.C. 3119.022 might be applied retroactively, the court chose to follow an abuse of discretion standard, instead, and affirmed the trial court's reliance upon R.C. 3113.215, the statute in effect at the time the divorce was filed and not requiring a retroactive application.
 {¶ 11} This Court has previously considered the question presented here, and has concluded that "a court must use the child support worksheet in effect at the time the complaint or motion is filed, rather than any new worksheet that may go into effect at a subsequent date." Zahn v. Zahn, 9th Dist. No. 21541, 2003-Ohio-6124, at ¶ 9. In so concluding, the Zahn court was persuaded by the fact that the language of the applicable statutes contains no clear indication that the statutes should be applied retrospectively to motions filed prior to their effective date. Id. at ¶ 8. That is, they do not clearly indicate retroactive application. Id. at ¶ 9. See, also, Marek v. Marek,158 Ohio App.3d 750, 2004-Ohio-5556, at ¶ 13; Bates v. Bates,
10th Dist. No. 04AP-137, 2005-Ohio-3374, at ¶ 17, fn. 8, andKaiser v. Kaiser, 8th Dist. No. 81346, 2003-Ohio-1343, at ¶ 25 (all using the child support worksheet in effect at the time the case was originally filed).
 {¶ 12} We now follow our precedent as stated in Zahn, and find that the trial court erred by deducting spousal support from Michael's gross income and by including it in Maureen's gross income in the process of determining Michael's child support obligation. Therefore, this case must be remanded to the trial court so that the child support obligation may be calculated in accordance with this opinion.
 {¶ 13} Maureen's first and second assignments of error are sustained.
 Assignment of Error Number Three
"THE TRIAL COURT ERRED IN ALTERING FIGURES IN THE CHILD SUPPORT WORKSHEET, FOLLOWING A REMAND FROM THIS COURT, FOR ITEMS THAT WERE NOT DISPUTED ON APPEAL, NOR INVOLVED IN THIS COURT'S MANDATE."
 {¶ 14} In her third assignment of error, Maureen has claimed that the trial court's treatment of spousal support in its child support calculations was contrary to the mandate of this Court in the second appeal of this case. Berthelot v. Berthelot,154 Ohio App. 3d 101, 2003-Ohio-4519. This question is rendered moot because of our holding on the first two assignments of error. See App.R. 12(A)(1)(c).[1]
 {¶ 15} Maureen's third assignment of error is without merit.
 Assignment of Error Number Four
"THE TRIAL COURT ERRED IN DEVIATING FROM THE GUIDELINE AMOUNT OF CHILD SUPPORT FOR APPELLEE'S PRIVATE EDUCATIONAL EXPENSES WITHOUT CONSIDERING THE REQUIRED STATUTORY FACTOR WHETHER THE GUIDELINE AMOUNT WAS UNJUST OR INAPPROPRIATE."
 Assignment of Error Number Five
"THE TRIAL COURT ERRED IN DEVIATING FROM THE GUIDELINE AMOUNT OF CHILD SUPPORT, FOLLOWING A REMAND FROM THIS COURT, BY NOT FOLLOWING THIS COURT'S MANDATE TO CONSIDER THE REQUIRED STATUTORY FACTORS, INCLUDING THE CHILDREN'S STANDARD OF LIVING HAD THE PARTIES REMAINED MARRIED."
 {¶ 16} In her fourth and fifth assignments of error, Maureen has challenged the trial court's allowance of a $28,000 adjustment to Michael's annual child support obligation based on Michael's payment of private school tuition for two unemanicpated children. Specifically, she has contended that the trial court failed to make the necessary statutory findings and explore the necessary statutory considerations before deviating from the guideline amount, as mandated by this Court in the second appeal. We agree.
 {¶ 17} The same issue was before this Court previously inBerthelot II. At that time, the trial court had found only that Michael's payment for the children's private education was "substantial" and "clearly benefits the children." Berthelot,2003-Ohio-4519, at ¶ 26. In her appeal from that decision, Maureen made an argument similar to that which she has presented in the instant appeal, contending that the trial court failed to make the findings necessary to support the deviation. This Court remanded the matter to the trial court to consider whether the guideline amount of child support would be unjust or inappropriate, and to consider the standard of living the children would have enjoyed had the parties remained married — matters included in R.C. 3113.215(B)(2) and R.C. 3113.215(B)(3).Berthelot, 2003-Ohio-4519, at ¶ 25. We, therefore, remanded the matter for consideration under the appropriate standards.Berthelot, 2003-Ohio-4519, at ¶ 26.
 {¶ 18} Maureen has now asserted that the trial court again failed to consider whether the guideline amount of child support would be unjust or inappropriate, and has failed to consider the standard of living the children would have enjoyed had the parties remained married. She has also argued that the trial court failed to follow the prior mandate of this Court on this issue.
 {¶ 19} For his part, Michael has asserted that Maureen should be barred from claiming any factual error because she failed to file the transcript of the hearing before the magistrate with the trial court. However, since Michael filed the transcript, the document was, in fact, before the trial court when it entered judgment. See Civ.R. 53(E)(3)(c). Any error in this regard is, therefore, harmless, and we proceed to consider the merits of the question presented.
 {¶ 20} In her decision of July 30, 2004, the magistrate found as follows:
"The deviation for private school tuition is in the bestinterests of the children as it permitted them to continue to attend the private school they had attended during the marriage. This afforded them the ability to then go on to college at high quality, largely private institutions, which in 1998 was also paid for by a trust funded by Defendant. Clearly Defendant was ordered to pay these amounts for the education of the parties' children. The payments permitted the children to continue to enjoy the standard of education they enjoyed during the marriage. Thus pursuant to ORC 3113.215(B)(1)(a) and (B)(3)(c)(l) and (n) (in effect at the time of the 1998 motion to modify support) theguideline amount of support is unjust, inappropriate and not inthe best interest of the children, and a deviation is warranted." (Emphasis added.)
 {¶ 21} The trial judge immediately adopted the decision of the magistrate, subject to objections by the parties, whereupon both parties filed objections to the magistrate's decision. The trial judge subsequently issued a three-page order in which she overruled all objections by the parties, granted Maureen's motion to modify child support, claimed evaluation of "income considerations and deviation factors," and calculated the amount of child support that was due. Accordingly, Civ.R. 53(E)(4) has been satisfied and the order is final and appealable. However, the trial court failed to journalize any specific findings that the guideline amount of support was unjust, inappropriate or not in the best interest of the children, and also failed to consider the standard of living the children would have enjoyed had the parents remained married. Therefore, the journal entry of the trial judge is erroneous in that it permitted a deviation from the guideline amount of child support without including the findings required by R.C. 3113.215(B)(2) and R.C. 3113.215(B)(3). In the absence of such findings, the trial court erred in deviating from the guideline amount of child support.
 {¶ 22} This Court will not review the rather perfunctory decision of the magistrate for purposes of determining whether it complies with R.C. 3113.215(B)(2) and R.C. 3113.215(B)(3) because it is clear that "[w]hat the referee does is not a judicial act."Walker v. Walker (Aug. 5, 1987), 9th Dist. No. 12978. What is more, the trial judge cannot elevate the magistrate's decision to the status of a judicial act by adopting it. Id. The order of the trial court, itself, must contain the statutory findings necessary to justify deviations from the child support guideline.
 {¶ 23} Upon remand, it is apparent that more is required than what is included in the decision of the magistrate or the journal entry of the trial judge. The trial court must first determine whether any change of circumstances is substantial enough to require a modification of the child support order. See R.C.3113.215(B)(4). Next, where the combined gross income of both parents is greater than $150,000, as here, the trial court should consider the amount of the obligor's child support obligation on a case-by-case basis and should also consider the needs and standard of living of the children as well as of the parents. See R.C. 3113.215(B)(2)(b). In addition, the court must compute the child support obligation under the basic child support schedule and the applicable worksheet, as directed in R.C.3113.215(B)(2)(b). The court may not deviate from that amount unless it determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. See id. In making such a determination, the trial court may consider the factors and criteria listed in R.C. 3113.215(B)(3). Finally, the trial court is obligated to enter in the journal: (1) the amount of child support calculated pursuant to the basic child support schedule and the applicable worksheet, (2) its determination that the amount would be unjust or inappropriate and would not be in the best interest of the children, and (3) findings of fact supporting that determination. See R.C. 3113.215(B)(2)(b). See, also, R.C. 3113.215(B)(2)(c).
 {¶ 24} Pursuant to the mandate of the statute, therefore, the trial court is obligated to enter findings of fact that demonstrate support for its determination before it may deviate from the worksheet amount. Such findings would be expected to explain why the worksheet amount of child support is unjust, inappropriate and not in the best interest of the children, and explain correspondingly why a downward deviation due to tuition payments would be just, appropriate and in the best interest of the children in the context of this case and the financial situation of these parties.
 {¶ 25} In the present case, it appears that the trial court assumed that Michael was obligated to pay private school tuition for all of the children throughout their high school years. However, the original divorce decree provided the following in regard to tuition payments: "Defendant has agreed to pay the tuition for the two oldest minor children at Western Reserve Academy in the amount of $13,000 per student per year, plus tuition for the two youngest children at Cuyahoga Valley Christian Academy in the amount of $4,000 per student per year." Thus, it seems that tuition payments beyond the specified years are voluntary on the part of Michael. The original decree required Michael to pay child support as well as to make the indicated private tuition payments. On remand and upon consideration of the motion to modify child support, the trial court should specifically explain why voluntary tuition payments may now be used to decrease the child support obligation and sustain the position that the worksheet amount is unjust, or inappropriate, and not in the best interest of the children.
 {¶ 26} Because the journal entry of the trial court fails to satisfactorily justify a deviation for tuition payments from the guideline amount of child support, in accordance with R.C.3113.215(B)(2) and R.C. 3113.215(B)(3), Maureen's fourth and fifth assignments of error are sustained.
 Assignment of Error Number Six
"THE TRIAL COURT ERRED IN DEVIATING $28,000, $14,000 PER CHILD, FOR APPELLEE'S PRIVATE EDUCATIONAL EXPENSES FOR THE PERIOD JUNE 1, 2000 THROUGH AUGUST 4, 2001 WHEN ONLY ONE CHILD OF THE PARTIES WAS UNEMANCIPATED."
 {¶ 27} In her sixth assignment of error, Maureen has claimed that the trial court erred in permitting a $28,000 tuition adjustment ($14,000 per child) to Michael's child support obligation for a portion of the three-year period covered by Maureen's motion to modify child support.[2] Upon review, we find merit in the argument.
 {¶ 28} The record indicates that the second youngest child graduated from Western Reserve Academy and was emancipated in June 2000. At that time, the youngest child had one more year of high school remaining and was emancipated in August 2001.
 {¶ 29} Maureen has argued that the high school graduation and emancipation of the second youngest child in June 2000 ended the requirement for tuition payments for that child by Michael. Maureen claims, therefore, that the tuition adjustment to Michael's child support obligation should only be $14,000 for the period of June 1, 2000 to August 4, 2001, instead of $28,000.
 {¶ 30} On appeal, Michael has not argued against the substance of Maureen's claim, but, instead, raises a procedural objection, claiming that Maureen failed to specifically refer the trial court to the basis for her objections, and also failed to cite to the factual basis for the alleged error in her appellate brief. Michael, however, has failed to indicate, in his own appellate argument, precisely what failings he perceives in Maureen's argument.
 {¶ 31} Maureen's objection to the decision of the magistrate indicated that the magistrate erred in "deducting $28,000 from the guideline amount of child support ($14,000 per child) for private educational expenses for the period from June 1, 2000 through August 4, 2001. There was only one unemancipated child during that time period." We find that the basis of Maureen's objection is sufficiently clear that the trial court could rule upon it.[3]
 {¶ 32} We next consider Michael's complaint that Maureen's appellate argument also failed to cite to the basis for the error in the record, and Michael's further argument that this Court should, therefore, not reach the merits of the issue. App.R. 12(A)(2) indicates that this Court "may disregard" an assignment of error if the party raising it "fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief[.]" The rule does not require us to do so. We also recognize that "[f]airness and justice are best served when a court disposes of a case on the merits." Dehart v. Aetna Life Ins. Co. (1982),69 Ohio St.2d 189, 193.
 {¶ 33} The point of Maureen's appellate argument appears to be clear, and she cites to specific dates for the emancipation of the two youngest children. The dates reflecting the emancipation of these children are also included within the magistrate's decision on which this appeal is based, and are otherwise included in the record. Given this record, it is appropriate to address the merits of this question.
 {¶ 34} In this case, child support, as modified, was awarded for approximately three years. In the child support worksheet, the magistrate clearly connected the $28,000 adjustment to the annual cost of high school tuition by writing on the worksheet: "Father pays $14,000 per year per child for 2 children to attend private school." The record supports the conclusion that $28,000 in tuition would have been owed for approximately two of the relevant years, but only $14,000 for the third year due to the graduation of the second youngest child. Because the adjustment is clearly tied to the actual cost of tuition, the objection has merit.
 {¶ 35} Provided that the trial court otherwise justifies a tuition deviation from the guideline amount of child support, the trial court must pro-rate any such adjustment over the three-year period and recalculate Michael's child support obligation in accordance with this opinion. See discussion at Assignments of Error Numbers Four and Five. Maureen's sixth assignment of error is sustained.
 Assignment of Error Number Seven
"THE TRIAL COURT ERRED IN FAILING TO STATE SUFFICIENT FINDINGS OF FACT SUPPORTING ITS DOLLAR-FOR-DOLLAR CHILD SUPPORT DEVIATION FOR APPELLEE'S PRIVATE EDUCATIONAL EXPENSES."
 {¶ 36} In her seventh assignment of error, Maureen has claimed the trial court erred in failing to provide sufficient findings of fact to support a dollar-for-dollar adjustment for private tuition expenses from Michael's annual support obligation. We find the argument to be without merit.
 {¶ 37} In support of her claim, Maureen has cited Long v.Long, 162 Ohio App.3d 422, 2005-Ohio-4052, Cameron v. Cameron,
10th Dist. No. 04AP-687, 2005-Ohio-2435, and Thomas v. Giroux
(Mar. 8, 2002) 1st Dist. No. C-010118. None of these cases compel the conclusion which Maureen urges. Long requires that the trial court make "findings of fact to establish its reasons for deviation," but does not require a dollar-for-dollar justification for deviations. Long, at ¶ 13. Cameron requires "specific findings of fact supporting the court's deviation," but does not require the court to justify deviations from the guideline amount on a dollar-for-dollar basis. Cameron, at ¶ 13. And, in Giroux, the court refused to allow a dollar-for-dollar offset from the guideline amount based on the facts of that case, but did not indicate that it otherwise required a special justification for any dollar-for-dollar deviation, or that it disallowed dollar-for-dollar deviations per se.
 {¶ 38} Michael has argued, in response, that the trial court's obligation extends only to stating factual findings supporting a deviation from the guideline child support amount, and that there is no further requirement to justify a dollar-for-dollar reduction. We agree.
 {¶ 39} The Ohio Supreme Court has held that any court-ordered deviation from the applicable worksheet and the basic child support schedule must be journalized and stated only that the court must include "findings of fact to support such determination." Marker v. Grimm (1992), 65 Ohio St.3d 139, paragraph three of the syllabus.
 {¶ 40} Accordingly, we do not find that the trial court has abused its discretion in correlating a deviation for private school tuition to the actual cost of tuition. Upon remand, any such deviation will, however, require appropriate justification as indicated above. See discussion at Assignments of Error Numbers Four and Five. Maureen's seventh assignment of error is overruled.
 Assignment of Error Number Eight
"THE TRIAL COURT ERRED IN FINDING THAT APPELLEE POSSESSED NO UNEXERCISED STOCK OPTIONS IN 1998 THAT VESTED IN 1996 AND 1997 AS PER THIS COURT'S AUGUST 27, 2003 MANDATE."
 Assignment of Error Number Nine
"THE TRIAL COURT'S FINDING THAT NO UNEXERCISED OPTIONS EXISTED IN 1998 THAT VESTED IN 1996 AND 1997 IS CONTRARY TO THE LAW-OF-THE-CASE DOCTRINE."
 {¶ 41} In her eighth and ninth assignments of error, Maureen has contested the trial court's valuation of unexercised stock options. For the reasons which follow, we overrule Maureen's eighth and ninth assignments of error.
 {¶ 42} In the second appeal of this case, the valuation of stock options was considered. This Court remanded the issue to the trial court to additionally account for any "increase in value during 1998 of unexercised stock options that vested prior to 1998." Berthelot, 2003-Ohio-4519, at ¶ 22.
 {¶ 43} On remand, the magistrate specifically found that "the only unexercised options were those that vested in 1998." She further found that Maureen did not present any testimony at the hearing to support a conclusion that there was any increased value of any other unexercised options, and that the value of $106,125 given to Michael's stock options for 1998 accurately reflects the value of the only unexercised options Michael had in 1998. The trial court overruled all objections and entered judgment consistent with the decision of the magistrate.
 {¶ 44} In her argument on appeal, Maureen has cited to two accounting documents and has claimed that these documents demonstrate error in the conclusion of the trial court. Maureen has failed, however, to place these documents in the context of all the evidence before the trial court at the time it made its decision on this issue, and has failed to develop the reasons why she believes the cited documents support her position. She simply points to these two documents in isolation.
 {¶ 45} The trial court had numerous briefs and an abundance of evidence on the question of the valuation of unexercised stock options before it. That evidence included the documents which Maureen now cites to this Court. The trial court, nevertheless, concluded that the value of $106,125 accurately reflected the value of the only unexercised options Michael had in 1998. Finding no demonstration of error by Maureen, this Court overrules Maureen's eighth and ninth assignments of error.
 Assignment of Error Number Ten
"THE TRIAL COURT ERRED WHEN IT FAILED TO PROPERLY FOLLOW THIS COURT'S MANDATE BY LIMITING THE TIME PERIOD FOR CONSIDERING MOTIONS TO MODIFY SPOUSAL SUPPORT FROM JANUARY 6, 2000 THROUGH SEPTEMBER 30, 2001."
 {¶ 46} In her tenth assignment of error, Maureen has argued that the trial court erred when it limited consideration of her motion to modify spousal support to the period from January 6, 2000 until September 30, 2001, instead of from the date of the original divorce decree, October 1, 1996, until September 30, 2001. The argument is overruled.
 {¶ 47} In Berthelot I, this Court remanded the issue of spousal support for a redetermination of the original award, and also found that the trial court's lack of reservation of jurisdiction to modify spousal support was a moot question.Berthelot, 9th Dist. No. 18331. In Berthelot II, this Court concluded that the trial court erred in not retaining jurisdiction to modify spousal support where the assets and income potential of the parties varied greatly, the definite term of spousal support was fairly lengthy, and the income of the obligor tended to fluctuate extensively. Berthelot,2003-Ohio-4519, at ¶ 55-58. At the same time, this Court also affirmed the order of the trial court which set spousal support at $6000 per month for 60 months. Id. at ¶ 40-41.
 {¶ 48} On remand from Berthelot II, Maureen moved to modify the order of spousal support. The trial court initially requested briefs on the question of what period of time was appropriately subject to the motion. Thereupon, the trial court found that the period from January 6, 2000, the date on which the trial court extended spousal support from 47 to 60 months, until September 30, 2001, the end of the 60-month term of spousal support, would be the period of time subject to the motion to modify spousal support. Next, the trial court set the question of whether spousal support should, in fact, be modified for hearing. A hearing was had upon that question, and, by subsequent journal entry, the trial court denied motions by both parties to modify the amount of spousal support during the previously designated period of time.
 {¶ 49} On appeal, Maureen has argued that the trial court should have considered her motion to modify spousal support from the date of the original divorce decree, October 1, 1996, until the end of the definite term of spousal support, September 30, 2001.
 {¶ 50} Michael has argued, inter alia, that Maureen failed to object to the magistrate's decision regarding the period of time which was subject to motions to modify spousal support. While Maureen did not object to the magistrate's post-hearing decision which denied her any increase in spousal support, she did object to the magistrate's pre-hearing decision on the period of time that would be subject to the motions to modify spousal support. The trial court clearly contemplated further proceedings after the first order. The issue of spousal support was not fully determined by the pre-hearing order, and was not rendered final until the post-hearing decision by the trial court. See, e.g.,Garvin v. Garvin, 4th Dist. No. 02CA23, 2004-Ohio-3626, at ¶ 13 and Civ.R. 75(F)(2). Therefore, we find that Maureen has complied with the Civ.R. 53(E)(3)(d) requirement of entering an objection to a magistrate's decision before raising that matter on appeal, and has also complied with App.R. 4, requiring a party to filed a notice of appeal within 30 days of the entry or judgment being appealed.
 {¶ 51} Maureen has argued that any modification of spousal support should reflect the period from the granting of the divorce in 1996 until the end of the term of spousal support in 2001 because the relevant ruling in Berthelot I was, she has claimed, not on the merits. In response, Michael has argued that this Court, in Berthelot II, found no abuse of discretion in the amount and term of spousal support awarded to Maureen.
 {¶ 52} A trial court has broad discretion in determining and in modifying an award of spousal support. Mottice v. Mottice
(1997), 118 Ohio App.3d 731, 735. This Court reviews a trial court's decision modifying spousal support under an abuse of discretion standard. Barrows v. Barrows, 9th Dist. No. 21904,2004-Ohio-4878, at ¶ 4. An abuse of discretion connotes more than a mere error in judgment; it signifies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. Absent an abuse of discretion, a spousal support award will not be disturbed on appeal. Barrows, at ¶ 4. Finally, "when applying the [abuse of discretion] standard, an appellate court is not free to substitute its judgment for that of the trial judge." Berk v. Matthews (1990), 53 Ohio St.3d 161, 169.
 {¶ 53} Upon consideration, this Court finds no abuse of discretion in the decision of the trial court. Maureen's tenth assignment of error is overruled.
 Cross-Assignment of Error Number One
"THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING MICHAEL'S REQUEST TO REDUCE SPOUSAL SUPPORT IN FINDING THAT HIS INCOME WAS SUBSTANTIALLY SIMILAR TO THAT ORIGINALLY ORDERED IN THE DECREE OF DIVORCE."
 {¶ 54} Michael has claimed that the trial court erred in denying his May 12, 2004 request to reduce his spousal support obligation. The argument is without merit.
 {¶ 55} On April 27, 2004, the trial court issued an order permitting Michael to file a motion to modify spousal support. Michael did so, and, thereafter, the magistrate denied the motion, finding that Michael's income at the time of the original support order was "similar" to his income in 2000 and 2001. Michael's objection to the magistrate's finding was overruled. On appeal, Michael has contended that his income declined significantly between 1998 and the years of 2000 and 2001, and that the trial court, therefore, erred in failing to decrease his spousal support obligation.
 {¶ 56} Before a trial court may modify an award of spousal support, it must determine whether the circumstances of either party have changed. R.C. 3105.18(E). Any award of spousal support must be found to be "appropriate and reasonable." R.C.3105.18(C)(1). In making such a determination, the court must consider: (1) the income of the parties; (2) the relative earning abilities of the parties; (3) the ages and health of the parties; (4) the parties' retirement benefits; (5) the duration of the marriage; (6) the appropriateness of the parties to seek employment outside the home; (7) the marital standard of living; (8) the relative extent of education of the parties; (9) the relative assets and liabilities of the parties, including any court-ordered payments by the parties; (10) the contribution of either party to the other's education; (11) the cost of education of the party seeking support; (12) the tax consequences of a spousal support award; (13) the lost income that results from the parties' marital responsibilities; and (14) any other factor the court deems relevant. See R.C. 3105.18(C)(1).
 {¶ 57} Michael's income over the years included a changing mix of salary, bonuses, stock options, consulting fees, director fees, and investment income. In addition to oral testimony, the evidence regarding the income of the parties included federal income tax returns, profit and loss comparisons, balance sheets, salary and bonus history, and investment portfolio summaries. As might be expected, the parties presented very differing views of their financial situations.
 {¶ 58} Michael has argued that his income and financial condition have substantially declined since the divorce decree, and especially since 1998. In 1996 his income was $536,000, and his net worth was $3,219,515. At the hearing below, Michael testified that Trans Technology, the company of which he was CEO, went into default late in 2000. Fourteen of fifteen divisions of the company were sold, and 2400 of 2600 employees were let go. His own position was eliminated and he became a director and consultant to the company, for which he was paid $50,000 in director's fees and $100,000 in consulting fees. His bonus income ended in 2000. His income in 2000 was $326,953 and his net worth was negative $2,877,805. His income in 2001 was $251,256, and his net worth was negative $533,365. In 2003, he received a severance package, which was used largely to pay down debts. His stock holdings were greatly diminished in value and have been frozen because of a governmental investigation. That investigation reportedly also hindered his efforts to find new employment. At the same time, Michael testified to an extravagant mortgage payment and to several expensive vacations.
 {¶ 59} Maureen, for her part, has argued that Michael's income figures for 2000 and 2001 are misleading because they include deductions for Schedule C interest payments. When those amounts are not incorporated, she claims that Michael's income in 2000 should be reflected as $486,137 and in 2001 as $420,873. Maureen has asserted that these figures do not mark a substantial decline when compared to Michael's income of $536,857 in 1996. In addition, Maureen has pointed out that Michael was not required to pay additional spousal support when his income climbed to $1,852,888, $842,058, and $1,106,596 in 1997, 1998, and 1999, respectively.
 {¶ 60} Maureen also testified that she had recently applied for ten or 12 jobs, but had had no success. She indicated that her automobile had high mileage and her home needed repair from floods that struck the area in 2003. She testified that she has been withdrawing $9000 monthly from her investment account for expenses. She has mortgage expenses of $2800 monthly.
 {¶ 61} Michael's income tax returns, admitted as exhibits, revealed adjusted gross income of approximately $442,000 in 1996, $1,853,000 in 1997, $842,000 in 1998, $1,107,000 in 1999, $255,000 in 2000, and $197.000 in 2001.
 {¶ 62} The magistrate found that Michael's income in 2000 was $509,409, and in 2001, it was $430,171. Using those figures, she concluded that Michael's income in 2000 and 2001 was "similar" to his income of $536,857 at the time of the original decree. Finding Michael's 2000-2001 income to be similar to his 1996 income is not the same as finding those incomes to be identical. Rather, the use of the term "similar" suggests that the trial court simply went on to the next step and considered the statutory factors. Thus, it appears that the trial court found Michael's circumstances to have changed, but upon consideration of the details of his finances, concluded that a modification of spousal support was not appropriate or reasonable.
 {¶ 63} A trial court has broad discretion in determining whether there has been a change in circumstances that, ultimately, warrants a modification or termination and in modifying a spousal support award. Mottice v. Mottice (1997),118 Ohio App.3d 731, 735. Such findings will not be reversed absent an abuse of discretion. Id. See, also, Barrows v.Barrows, 9th Dist. No. 21904, 2004-Ohio-4878, at ¶ 4. The trial court was free to credit the testimony and evidence presented by either witness. Evaluation of the parties' financial situations was not a simply a matter of comparing adjusted gross incomes on federal tax returns, but instead required analysis and consideration. Upon this record, we do not find that the trial court abused its discretion when it denied Michael's motion to modify spousal support. Michael's first cross-assignment of error is overruled.
 Cross-Assignment of Error Number Two
"THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING ATTORNEY FEES TO MAUREEN."
 {¶ 64} Michael has contended that the trial court abused its discretion in awarding attorney fees of $68,989 to Maureen. For the reasons which follow, we sustain the assignment of error and remand this matter for consideration under R.C. 3105.73.
 {¶ 65} Maureen filed a motion for attorney fees on September 23, 2003 for legal services on the second appeal and on post-remand proceedings. The matter was heard on May 20, 2004, and decided by a magistrate on July 30, 2004. On July 11, 2005, the trial court ordered Michael to pay the full amount of attorney fees requested.
 {¶ 66} In deciding to award attorney fees and in setting the amount of such fees, it appears that the trial court relied upon R.C. 3105.18(H). Significantly, the General Assembly repealed Section (H) of R.C. 3105.18 on April 27, 2005, and enacted R.C.3105.73, regarding the award of attorney's fees and litigation expenses in certain domestic relations cases, to be effective on the same date.
 {¶ 67} Former R.C. 3105.18(H) provided as follows:
"(H) In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal, any proceeding arising from a motion to modify a prior order or decree, and any proceeding to enforce a prior order or decree,if it determines that the other party has the ability to pay theattorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party willbe prevented from fully litigating that party's rights andadequately protecting that party's interests if it does not award reasonable attorney's fees." (Emphasis added.)
 {¶ 68} In contrast, newly enacted R.C. 3105.73(B) provides:
"(B) In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding,the court may award all or part of reasonable attorney's feesand litigation expenses to either party if the court finds theaward equitable. In determining whether an award is equitable,the court may consider the parties' income, the conduct of theparties, and any other relevant factors the court deemsappropriate, but it may not consider the parties' assets."
(Emphasis added.)
 {¶ 69} Significantly, the uncodified law accompanying R.C.3105.73 makes the statute retroactive to actions pending in a trial or appellate court on the effective date of April 27, 2005. These legislative statements indicate that R.C. 3105.73 will apply where "[t]he action or proceeding is brought, or a notice of appeal in the action or proceeding is filed, prior to the effective date of this act, and the action or proceeding is pending in a trial or appellate court on the effective date of this act." Therefore, since the motion for attorney fees was brought prior to April 27, 2005 and the matter was pending in the trial court on that date, R.C. 3105.73 controls the question of attorney fees on the motion here at issue.
 {¶ 70} In considering the substance of the section which has been repealed and the new statute which has been enacted, we note several changes. By repealing R.C. 3105.18(H), the legislature has eliminated language regarding the determination of whether the obligor party "has the ability to pay the attorney's fees that the court awards" as a necessary predicate to any award, and has also eliminated language regarding the determination of "whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees" from the statute. At the same time, by enacting R.C. 3105.73(B), the legislature has stated that an award of attorney fees and litigation expenses requires a determination that the award is "equitable," and further defines that term as involving consideration of "the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets."
 {¶ 71} We find these changes to be particularly significant to the present case because of certain findings made by the trial court. For example, on February 11, 2004, the magistrate set the question of post-decree attorney fees for hearing in accordance with DR 2-106 and R.C. 3105.18. The magistrate specifically indicated that the ability to pay and the ability to litigate fully were important considerations. On April 27, 2004, the trial judge affirmed that the trial court must hear evidence on whether either party was prevented from litigating that party's rights, a matter which was included in the now defunct statute. Following the hearing, the magistrate made findings on July 30, 2004, regarding the assets of both parties. The magistrate specifically found that "[a]lthough [Michael's] income is decreased, * * * he still has substantial assets from which an award of fees could be paid." The magistrate also entered findings regarding Maureen's ability to litigate and decided that such ability was impaired because her spousal support award had expired and her investment assets had decreased. The new statute plainly bars consideration of either party's assets. Thereafter, on July 11, 2005, the trial court adopted the decision of the magistrate, again considering Maureen's assets and finding that Maureen's ability to litigate was impaired.
 {¶ 72} Therefore, in reaching its decision on attorney fees, the trial court placed significant reliance upon the explicit factors of R.C. 3105.18(H), the repealed statute. In addition, the trial court failed to apply the newly operative factors of R.C. 3105.73(B), including the required finding that any award of attorney fees must be equitable, and prohibiting consideration of the parties' assets.
 {¶ 73} Because a determination of attorney fees involves fact-finding and decision-making which is properly done in the first instance by the trial court, the issue of attorney fees must be remanded for consideration by the trial court under the appropriate statute. Michael's second cross-assignment of error is sustained.
 III {¶ 74} Maureen's first, second, fourth, fifth, and sixth assignments of error are sustained. Maureen's seventh, eighth, ninth, and tenth assignments of error are overruled. Maureen's third assignment of error is moot. Michael's first cross-assignment of error is overruled. Michael's second cross-assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to both parties equally.
Carr, J. Boyle, J. concur.
[1] To the extent that Maureen has also raised this argument as part of her second assignment of error, we similarly find that argument to be moot.
[2] The entire period covered by Maureen's motion to modify child support is June 2, 1998 until August 4, 2001, and this assignment of error relates to the period from June 1, 2000 (the emancipation of the second youngest child) to August 4, 2001 (the emancipation of the youngest child).
[3] The trial court overruled the objection without comment.